Argued October 30, reversed November 20, rehearing denied December 11, 1917.

## RICHEY *v.* ROBERTSON.*

(169 Pac. 99.)

**Courts—Records—Entries Nunc Pro Tunc.**

1.   Where the court granted leave to plaintiff to amend the complaint by interlineation, but the proceedings relative to the amendment were not entered upon the journal, a *nunc pro tunc* order setting forth the facts might be made upon the memory of the court alone, especially where an inspection of the record indicated that there was an omission, as it contained no reference to the argument and overruling of a demurrer.

**Pleading—Want of Verification—Waiver.**

2.   Where the complaint was amended by interlineation and no motion was made to strike it out for want of a verification, the objection was waived.

---

*On effect of subsequent acceptance to take sale out of statute of frauds, see note in 10 L. R. A. (N. S.) 638.        REPORTER.

**Frauds, Statute of—Operation and Effect—Executed Contracts.**

3. If a piano was sold, delivered and accepted, the contract was executed, and the statute of frauds could not be invoked to defeat a recovery of the purchase price.

**Trial—Remarks of Judge—Rulings on Evidence.**

4. In an action for the price of a piano which plaintiff claimed had been sold, delivered and accepted, where defendant claimed that the piano was left at his house on trial, and that he never agreed to purchase it, but notified plaintiff to remove it, the court's remark, in ruling on an objection based on the statute of frauds, that the sale of personal property did not have to be in writing and that "this is an executed agreement," was improper, as it assumed the main fact in dispute.

> [As to manner or tone of court in instruction or remark as prejudicial error, see note in Ann. Cas. 1912A, 1006.]

**Appeal and Error—Harmless Error—Remarks of Judge.**

5. Where the evidence appeared to be evenly balanced, such remark constituted reversible error, and was not cured by a general instruction to disregard any remark which the court might have made during the course of its rulings upon the testimony, as under the circumstances the remark should have been expressly withdrawn.

**Witnesses—Cross-examination of Party—Irrelevant Matters.**

6. Considerable latitude should be allowed in plaintiff's cross-examination of defendant regarding the particulars of a conversation testified to by defendant, though the matters elicited had little, if any, relevancy, as, the witness being adverse, plaintiff could not know this in advance.

**Evidence—Matters Explanatory of Facts in Evidence.**

7. Where, in an action for the price of a piano which defendant claimed was only left with him on trial, the drayman who delivered the piano testified that he said to defendant and his wife that they had a nice piano and that one of them said that they thought so, defendant should have been permitted to testify as to whether he intended to tell the drayman that he had bought the piano, as the answer to the drayman's remark was ambiguous, and there was no contractual relation preventing him from stating the impression which he intended to convey.

From Union: JOHN W. KNOWLES, Judge.

Action by G. M. Richey against Walter G. Robertson. From a judgment rendered upon a verdict in favor of plaintiff, defendant appealed. Reversed.

In Banc. Statement by MR. CHIEF JUSTICE MCBRIDE.

This was an action to recover for the price of a piano which the complaint alleged the plaintiff had sold and delivered to the defendant.

The original complaint alleged merely that the piano was "sold" to the defendant, but upon argument of a demurrer the plaintiff asked and obtained leave to insert by interlineation the words "and delivered" after the word "sold." No objection by the defendant appears to the order of the court permitting such amendment. The proceedings relative to the amendment not having been entered upon the Journal, the court—subsequent to the trial—made a *nunc pro tunc* order setting forth the facts above stated, and this among other matter is specified as error.

In the course of the trial defendant objected to certain oral testimony offered by plaintiff, on the ground that the alleged contract was for the sale of personal property of over the value of more than $50, and that oral evidence of such a nature was prohibited by the statute of frauds. In ruling upon this the court in the hearing of the jury, made the following remark:

"The sale of personal property does not have to be in writing when over fifty dollars. That is in connection with an agreement on breach of a contract of sale. This is an executed agreement. The objection is overruled." Which ruling was excepted and his exception was allowed.

Upon the trial several objections were made by defendant as to the rulings of the court upon the admission of testimony, which will be further stated and considered in the opinion.

At the conclusion of plaintiff's case, defendant moved for a nonsuit, which motion was denied and such denial is assigned as error.

There was also a motion for a directed verdict, which was denied.

The court gave the following instructions to the jury:

"I instruct you, gentlemen of the jury, that in law a sale is the agreed transfer of property having some value, to another for a valuable consideration. A sale may be shown by facts and circumstances as well as by direct proof.

"I further instruct you that in order to make a completed sale, it is not necessary that any money actually change hands at the time of the agreement. If the minds of the parties meet on the property bargained for, that is, if one party sells and the other one buys the property bargained about, it is not necessary that any money actually change hands at the time of the transfer, as in law a promise to pay constitutes a valuable consideration.

"I further instruct you, that if you believe from the evidence that between the 1st day of September, 1916, and the 20th day of November, 1916, the plaintiff, at the request of the defendant, sold and delivered to the defendant the piano mentioned in testimony, and that defendant agreed to pay $150.00 on said piano on or about the 16th day of November, 1916, and that said sum has not been paid nor any part thereof, then it will be your duty to find for the plaintiff in the sum of $150.00.

"I further instruct you that if you believe from the evidence that at the time mentioned in testimony, the plaintiff and the defendant entered into an agreement wherein and whereby the terms of which the plaintiff agreed to and did sell the defendant the piano in controversy, and the defendant in consideration therefor agreed to and did buy said piano and agreed to pay $150.00 on the purchase price of same on or about the 16th day of November, 1916, and that the defendant has not paid for the same, then this would be a completed sale and it would be your duty to find for the plaintiff in the sum of $150.00.

"There was some testimony in this case that the defendant notified the plaintiff to come and get the piano in question. I instruct you, a vendor of goods is under no obligation to and the law does not require him to receive goods back after a complete sale, but

on the other hand it is the duty of the purchaser to pay the price, if any, agreed to pay for goods actually purchased.

"I instruct you that delivery of an article for test or trial is not a delivery on sale. And if you find in this case, that there was a delivery of a piano by plaintiff to defendant for test or trial, and not as absolute owner, then the plaintiff cannot prevail and your verdict should be for the defendant.

"I instruct you that the word 'sale' has a particular and legal meaning, and before you can decide that there was a sale in this case of the piano in question by plaintiff to defendant, you must find from the testimony, that the minds of both parties met, that is, that there was a positive unequivocal agreement on the part of the plaintiff to part with the title of said piano and vest the same in defendant, at time of agreement, whether it was paid for or not, and an instant agreement by defendant then and there to receive and accept title to said piano as his absolute property, without regard to whether he paid for it or not. There must have been no conditions whatever to be performed by either party prior to change of ownership of said piano, and if you find there were conditions to be performed or any reservations made by either party, then your verdict should be for the defendant, but I instruct you that title might pass from the seller to the purchaser notwithstanding the seller was to give the purchaser a bill of sale, provided it was the intention of the parties that title should pass.

"I instruct you that there has been a motion on part of defendant for a nonsuit, and that the court refused the same, yet you are not to consider such fact or decision by the court in any manner governing you or deciding the case or directing a verdict. You must be governed entirely by the evidence and these instructions which I give you.

"An acceptance of an offer to sell need not be by any particular words. If the seller offers to sell, and the buyer in any manner communicates to the seller his acceptance of the offer, this would be an accept-

86 Or.—34

ance of the offer. An order for goods to be delivered according to the terms of the order or communication.

"I instruct you, that during the trial of this action, the court in ruling upon questions of evidence may have expressed its opinions as to the law at the time, but that was a matter relating entirely to questions involved and you are not to be governed by the same in arriving at your verdict, but you are to take the law of the case entirely from these instructions.

"I instruct you that there has been some testimony in this case relative to what the wife of defendant may have said to plaintiff not in the presence of defendant, about a sale, but that was what is classed as an admission on her part; that she is not a party to this action, and does not in any manner bind the defendant, nor would it be any evidence of a sale. You are therefore further instructed that you are to receive such admissions, if any were made, with caution and only as affecting the testimony and credibility of that witness."

Defendant duly excepted to instructions 1, 2, 3, 4, 5.

Defendant also excepted to an oral instruction of the court to the jury, that if they find for the plaintiff, they should find for $150, and so read and submitted a form of verdict to the jury containing "$150.00," as invading the province of the jury.

There was also an exception to the refusal of the court to give the following instructions:

"I instruct you, that under the view the court takes of the law in this case, it is your duty to find for the defendant, and your verdict should be for the defendant.

"I instruct that there has been some testimony in this case that defendant's wife on one occasion admitted that there was a sale of the piano in question by plaintiff—not in the presence of the defendant. I instruct that even if you find from the testimony, that said witness did make such admission—yet, unless you find further from the testimony that she was specially

authorized to do so by the defendant that such admission would not in any manner bind the defendant—as he alone is sued herein—and you are to disregard such testimony.

"Gentlemen of the jury, I instruct you that in this case, the law requires, that to constitute a sale of personal property of over the value of $50.00, there must have been an acceptance and receipt of the piano in question on the part of defendant as the owner thereof; that to constitute an acceptance by defendant, there must have been a delivery of the piano by plaintiff to defendant, with the intention of vesting the right of possession as owner in defendant, and must have been a receipt and acceptance by the defendant of said piano with the intention of receiving the same as owner thereof. So that if you find from the testimony in this case, that the defendant did not receive and accept the piano, with the intention of keeping it as owner thereof, then you must find for the defendant."

There was a verdict and judgment in favor of plaintiff for $150, and defendant appeals.

REVERSED.    REHEARING DENIED.

For appellant there was a brief and an oral argument by *Mr. Charles H. Finn.*

For respondent there was a brief and an oral argument by *Mr. R. J. Green.*

Opinion by MR. CHIEF JUSTICE McBRIDE.

1, 2.  A great portion of the respondent's brief in this case is taken up with a discussion of the *nunc pro tunc* order, which recites that upon the argument of the demurrer to plaintiff's complaint, the demurrer was overruled, and that plaintiff was permitted to amend the complaint by interlining the words "and delivered." Whatever the rule may be in other states it

is settled here that a *nunc pro tunc* order may be made upon the memory of the court alone: *State* v. *Donahue,* 75 Or. 409–416 (144 Pac. 755, 147 Pac. 548).

It is evident from an inspection of the record that there was an omission in the record of the proceedings of January 5, 1917, as all parties agree that a demurrer was argued and overruled on that date, and yet there is no record of that fact except the *nunc pro tunc* order made on April 17th. The *nunc pro tunc* order is conclusive upon this court, and as no motion was made to strike out the complaint as amended, for want of a verification, the objection must be taken as waived.

There was really but one issue of fact in the case. The plaintiff claimed, and his testimony tended to show, that the defendant had ordered the piano and agreed to pay $150 cash down, and $160 about the 16th of December; that in pursuance of such contract he delivered to and the defendant accepted the piano, but thereafter refused to pay the $150, as promised. The defendant claimed, and his testimony tended to show, that plaintiff requested permission to send the piano to his house upon trial, and that he consented to the proposal and that there was never any agreement on his part to purchase the piano or to pay for the same, and that thereafter he seasonably notified the plaintiff of his intention not to take the instrument and requested him to remove it, which plaintiff failed to do.

3–5. If plaintiff's theory was the true one the contract was an executed contract, and the statute of frauds could not be invoked. If defendant's contention as to the facts was true, there never was a contract of sale, or delivery, which could satisfy the statute. Plaintiff could only recover by showing an executed contract; the execution depending upon an agreement

to purchase plus a delivery and acceptance, pursuant to such an agreement. The remark of the court, therefore, that "this is an executed agreement" assumed the main fact in dispute and certainly had a tendency to prejudice defendant's case before the jury.

The judge who tried this case is known to be one of the most careful, painstaking jurists in the state, and it is evident that he had in his mind and intended to say "the plaintiff is suing upon an executed contract." The expression used was probably a mere slip of the tongue but the case was a close one; the evidence so far as it appears in cold type, was very evenly balanced, and under such circumstances it is at least possible if not probable that the minds of some jurors might have clung to the remark and been influenced by it.

We would not in every case be disposed to attach much importance to a remark of the court made in the course of a ruling upon testimony, but in a close case such as this, where the remark went to the very vitals of the issue being there tried, we think it constitutes reversible error, which was not cured by a general instruction to disregard any remark the court might have made during the course of its rulings upon the testimony. Under the peculiar circumstances the remark should have been expressly withdrawn.

6. Objection is made to questions asked defendant upon cross-examination in regard to the particulars of a conversation which he testified he had with plaintiff in regard to plaintiff's claim against him. The matters elicited had little if any relevancy to the case, but the witness being adverse the plaintiff of course could not know this in advance, and under such circumstances considerable latitude should be allowed in cross-examination.

Our statute provides that:

"When part of an act, declaration, conversation or writing is given in evidence by one party, the whole or the same subject may be inquired into by the other": Section 711, L. O. L.

In *Mahon* v. *Rankin,* 54 Or. 328, 329 (102 Pac. 608, 103 Pac. 53), it is said:

"The better rule is, that the balance of the conversation to be competent must be material and in some way affect that portion of the conversation already proved."

Tested by this rule it is difficult to see how the balance of the conversation which attempted unsuccessfully to elicit from the witness an admission that he had followed plaintiff upon the street and threatened to whip him, and stated he had been assured that if he would whip plaintiff his fine would be paid, tended to explain or affect the facts already brought out. In any event, his answers rendered the questions harmless.

7. Another assignment of error relates to the exclusion of certain testimony offered by plaintiff and arose in this wise. It was attempted to be shown by plaintiff that when Frank Clevenger, a drayman, took the piano from the store of plaintiff to defendant's residence, he said to defendant and his wife: "You have a nice piano here," and that defendant or his wife said, "Yes, we think so." When defendant was on the witness-stand, his counsel asked him referring to this incident:

"Did you intend to tell him at the time you had bought it? Ans. No, sir."

Upon motion of plaintiff, this answer was stricken out.

"Q. Did you mean to inform the drayman you had bought it?"

Mr. Green objected to this as immaterial, incompetent and invading the province of the jury.

"The Court: Where they are unambiguous it is for the jury to say what he meant by it, and the objection is sustained."

We are of the opinion this ruling was erroneous. The plaintiff could justly argue that by the language used the defendant intended to convey to the drayman the impression he had purchased the piano and that it was his property. The language was subject to such a construction, but on the other hand it might properly have been used in a case where the instrument had been taken on trial. The court substituted a rule for the interpretation of contracts for a rule governing the admissibility of evidence. In interpreting a contract it is not what impression one party meant to convey to another, which defines the rights of the contractee, but what he says. For instance, if Richey had said to the defendant, "I will sell you this piano for $300," and defendant had said, "All right, send it up to the house and I will take it," and plaintiff had sent it and defendant received it, here would be a complete contract and defendant could not be allowed afterwards to say that when he said, "I will take it; send it up," that he meant he would take it on trial and if unsatisfactory would return it.

This estoppel arises by reason of a contractual relation having been created by the language of acceptance. But there was no contractual relation existing between defendant and the drayman, and even if in answer to the drayman's question he had gone further than the record indicates, he should have been allowed to state his reasons for doing so. Besides the answer

was in fact ambiguous. The plaintiff might and no doubt did contend that the defendant intended for the drayman to understand by his language he had purchased the piano, and it was therefore an admission against interest, while the defendant could fairly contend that by the language used he intended to make no such admission.

Objections are made to the giving of certain instructions by the court and the refusal of others requested by defendant, but we consider these not well taken. The instructions given fairly covered the whole case and correctly state the law.

For the errors above indicated the judgment is reversed and a new trial directed.

REVERSED.   REHEARING DENIED.